IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 7 |
| VAN P. ATHENS, | * | |
|     Debtor | * | Case No.: 1-06-bk-02293MDF |
| | * | |
| KELLY BEAUDIN STAPLETON | * | |
| UNITED STATES TRUSTEE, | * | |
|     Movant | * | |
| | * | |
| v. | * | |
| | * | |
| VAN P. ATHENS, | * | |
|     Respondent | * | |

**OPINION**

Before me is the motion of the United States Trustee ("UST") to dismiss the petition filed by Van P. Athens ("Debtor") under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). The UST's motion invokes 11 U.S.C. § 707(b)(1) and (3). These provisions provide for the dismissal of a chapter 7 case if, after considering whether the petition was filed in good faith and the totality of the debtor's financial circumstances, the Court finds that granting relief would be an abuse of the Bankruptcy Code. The motion has been heard and is ready for decision.[1]

**Factual Findings**

Debtor lives with his wife and two adult children. He conducts business as Triple A HVAC, and his non-debtor spouse is employed full time by EDS and part time by Christopher &

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (O). This Opinion constitutes the findings of fact and conclusions of law required to be made pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 7052, which is applicable to contested matters pursuant to FRBP 9014.

1

Banks, Inc. Debtor's original schedule "I" stated that Triple A HVAC generated income of $300.00 per month and that his spouse's gross and net monthly income was $4,583.33. Debtor's schedule "I" reported that his wife had a part-time job, but did not report income received from the position. Debtor's total net monthly household income of $4,883.33 as reported on the original schedule "I" is below the median for a four-person household in Pennsylvania. Debtor's original schedule "J" listed monthly expenses totaling $4,402.00, thus leaving disposable income of $481.33 per month for the household.

Debtor owns two real properties, his residence and an investment property. In the original schedule "I" filed with the Court, Debtor did not disclose any rental income from the investment property. After reviewing his petition, the UST requested Debtor to provide additional information about his income, assets and business interests. On February 21, 2007, Debtor filed an amended schedule "I." In the amended schedule Debtor reduced his spouse's net monthly income to $4,271.00, without explanation, but he also stated that the amount reported included income from both her full-time and part-time positions. Although it is not clear from the record, the Court assumes that the amended schedule was in response to the UST's request for additional information.

On March 19, 2007, the UST filed the instant motion to dismiss. She asserted that Debtor's schedule "I" was inaccurate, stating that it failed to disclose federal income tax refunds received in 2004 and 2005 in the amounts of $4,437.00 and $3,385.00, respectively. The motion further asserted that Debtor's schedule "J" stated that Debtor made charitable contributions of $500.00 per month, when the actual contributions made were considerably less.

2

On April 25, 2007, Debtor filed a second amended schedule "I" as well as an amended schedule "J," apparently in response to the motion to dismiss. In the second amended schedule "I" Debtor revealed for the first time that he received rental income from his investment property. Due to offsetting losses, however, he reported that the property generated a monthly net loss of $493.00. The second amended schedule "I" also reported that Triple A HVAC operated at a monthly net loss of $457.00. The statement of income for Debtor's spouse was amended to reflect income tax over withholding, which increased Ms. Athens' net monthly income to $3,653.25. Amended schedule "J" reported reduced expenses by eliminating the $500.00 monthly charitable contribution. Overall, the final amended schedules showed a monthly shortfall for Debtor's household of $29.00.

## Discussion

The Bankruptcy Code provides for dismissal of a chapter 7 case if "granting relief would be an abuse of the provisions of" the Code. 11 U.S.C. § 707(b)(1). Whether abuse exists is determined under subsections 707(b)(2) and (3).

Section 707(b)(2) describes the "means test," which is intended to objectively assess a debtor's ability to repay his debts. Section 707(b)(2)(A) establishes a presumption that a chapter 7 filing is abusive if certain thresholds are met. Specifically, the filing will presumed to be abusive if a debtor has monthly disposable income of more than $166.67. Alternatively, if a debtor has monthly disposable income between $100.00 and $166.66 per month, the case will be presumed abusive if that amount when multiplied by 60 will pay 25% or more of the debtor's non-priority unsecured debts. If a debtor's disposable income is less than $100.00 per month, no presumption of abuse arises. Under § 707(b)(7) these presumptions are irrelevant if a debtor's

3

household income is below the state median for a household of the same size. Debtor is not subject to the "means test" under § 707(b)(2) because his family's income for the six months prior to the filing of his bankruptcy petition was below the state median for a four-person household. Nevertheless, the UST argues that amount of disposable income generated by Debtor's household should be considered when determining whether a case should be dismissed under the totality of the circumstances under § 707(b)(3).

Section 707(b)(3) provides as follows:

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph [b](A)(i) of such paragraph does not arise or is rebutted, the court shall consider--

1. **(A)** whether the debtor filed the petition in bad faith; or

    **(B)** the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C.A. § 707(b)(3).

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 ("BAPCPA"), the burden of proof in a motion under § 707(b) was on the UST to demonstrate *substantial* abuse by a preponderance of the evidence. *In re Miller*, 335 B.R. 335 (Bankr. E.D. Pa. 2005). Not only did the abuse shown have to be substantial, there also was a statutory presumption in favor of granting relief to a chapter 7 debtor. As amended by BAPCPA, the Bankruptcy Code no longer incorporates a presumption in favor of granting relief and abuse now need not be substantial. 11 U.S.C. § 707(b)(1). Nonetheless, the burden remains with the UST to prove that the Debtor's filing constitutes an abuse of the bankruptcy process. *See In re Colgate*, ___B.R___, 2007 WL 1649103, *6 (Bankr.

4

E.D.N.Y. May 31, 2007). "Under pre-BAPCPA § 707(b), once the UST demonstrated a debtor's ability to make substantial payment on unsecured debt, the burden shifted to the debtor to show his or her entitlement to Chapter 7 relief. . . . I see nothing in the statute or its legislative history to lead me to evidence [of] a change." *In re Lenton*, 358 B.R. 651, 664 -665 (Bankr. E.D. Pa. 2006) (citations omitted).

The motion before me alleges that Debtor's case should be dismissed because his household has sufficient monthly disposable income to permit him to fund a chapter 13 plan. Although the UST uses neither the term "bad faith" nor "fraud" in her motion, she asserts that the income and expenses figures provided in Debtor's final amended schedules are inaccurate. The UST alleges that the losses for Triple A HVAC and Debtor's investment property are not reasonable expenses. Therefore, if these expenses were eliminated, the disposable monthly income generated by Debtor's household would be sufficient to enable him to fund a chapter 13 plan that would pay approximately fifty percent of his unsecured debt over three years.

Debtor first counters that because his household income is below the state median, he should not be subject to dismissal under § 707(b)(3) on the sole basis of the ability to pay. Because his case is not presumed to be abusive under § 707(b)(2), Debtor argues that his case cannot be found to be abusive under § 707(b)(3) based upon a monthly surplus of disposable household income. He also asserts that the motion to dismiss relies on the existence of disposable income alone without considering other factors as required in a totality of the circumstances analysis. He further responds that because the disposable household income listed on his second amended schedule "I" is generated by his non-debtor spouse, there is no basis to assert that he personally has the ability to fund a chapter 13 plan. Finally, Debtor argues that his business and

5

Case 1:06-bk-02293-MDF    Doc 53    Filed 08/20/07    Entered 08/21/07 07:53:34    Desc
Main Document      Page 5 of 16

investment property losses are not unreasonable expenses, and, in any event, if added back to Debtor's personal monthly income, would not provide sufficient monies to fund a plan without the assistance of his wife.

The UST does not dispute that Debtor's household income is below the state median. However, she argues that § 707(b)(7) does not preclude a bankruptcy court from considering the amount of a debtor's monthly disposable income in deciding a motion to dismiss filed under § 707(b)(3). She further argues that § 707(b)(3) was intended to incorporate pre-BAPCPA case law holding that the ability to fund a chapter 13 plan may be a key factor in determining that, under the totality of the circumstances, a chapter 7 case is an abusive filing.

    a.    *Is a debtor's ability to repay debts a factor to be considered under § 707(b)(3)?*

There is academic support for the position that a debtor's ability to pay may be considered only under § 707(b)(2) and is not relevant in a totality of the circumstances review under § 707(b)(3). *See* Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?* 13 Am. Bankr. Inst. L. Rev. 665 (Winter 2005).[2] Courts also have considered the interplay between § 707(b)(2) and (b)(3) and whether a debtor's income and expenses may be examined under (b)(3) if a debtor either "passes" or is not subject to the means test. This court has been unable to locate any case adopting the Culhane-White theory that a debtor's ability to pay may be examined only under § 707(b)(2). Although they are not in

---

[2]"To say that judges are free under section 707(b)(3) to substitute their own can-pay standards for Congress' means test would render the means test superfluous. Yet the canons of statutory construction require just the opposite, and direct courts to construe the provisions within a statute to be consistent with each other, and to give meaning to all parts. The general abuse section . . . does not replace the means test's many detailed rules with alternate tests of ability to pay. Section 707(b)(3)'s "bad faith" and "totality of the circumstances" standards must give way to the more specific means test algorithm. 13 Am. Bankr. Inst. L. Rev. at 682.

6

agreement as to whether a debtor's ability to pay alone may justify dismissal under § 707(b)(3), there is overwhelming support for consideration of this factor in the analysis of the totality of the circumstances. *See In re Baldino*, ___ B.R. ___, 2007 WL 1705634 (Bankr. M.D. Pa. June 14, 2007); *In re Mestemaker,* 359 B.R. 849 (Bankr. N.D. Ohio 2007); *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007); *In re Henebury*, 361 B.R. 595 (Bankr. S.D. Fla. 2007); *In re Zaporski*, ___ B.R. ___, 2007 WL 1186032 (Bankr. E.D. Mich. April 17, 2007); *In re Pfiefer*, 365 B.R. 187 (Bankr. D. Mont. 2007); *In re dePellegrini*, 365 B.R. 830 (Bankr. S.D. Ohio 2007) (ability to pay considered but does not dictate dismissal if other factors weigh against dismissal); *In re Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006); *In re Paret*, 347 B.R. 12 (Bankr. D. Del. 2006); *In re Simmons*, 357 B.R. 480 (Bankr. N.D. Ohio 2006); *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006) (ability to pay may be considered but case should not be dismissed solely on that ground); *In re McUne*, 358 B.R. 397 (Bankr. D. Or. 2006); *In re Lenton*, 358 B.R. 651 (Bankr. E.D. Pa. 2006).

Section 707(b)(3) directly addresses situations in which a debtor's financial circumstances do not give rise to a presumption of abuse. It specifically states that in cases in which the presumption of abuse "does not arise or is rebutted," a court must consider whether under "the totality of the circumstances," a "debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(B). A debtor's "financial situation" clearly includes his ability to pay his debts. Judge Walrath came to a similar conclusion in *Paret* in which the debtors had current monthly income below the state median and, thus, were within the safe harbor provision of § 707(b)(7). She observed that:

7

Case 1:06-bk-02293-MDF    Doc 53    Filed 08/20/07    Entered 08/21/07 07:53:34    Desc
Main Document    Page 7 of 16

> Debtors within the protection of paragraph (b)(7) are only safe from a presumption of abuse that might otherwise arise under paragraph (b)(2) and are not beyond the reach of paragraph (b)(3)'s comprehensive, statutorily-mandated inquiry into their fitness for chapter 7 relief. . . . When no presumption of abuse arises under paragraph (b)(2), the Court concludes that the Code mandates consideration of a debtor's ability to pay his creditors within the test articulated in paragraph (b)(3).

*Id.* at 15, *citing In re Pak,* 343 B.R. at 244. I concur with this observation and, accordingly, will examine the totality of the circumstances in this case, including whether Debtor can repay a significant portion of his unsecured, non-priority debt through a chapter 13 plan.[3]

      b.    *What constitutes the totality of the debtor's financial circumstances?*

In a pre-BAPCPA decision rendered by this Court, *In re Miller,* 302 B.R. 495 (Bankr. M.D. Pa. 2003), I adopted the "hybrid approach" to analyze the totality of the circumstances under § 707(b) used by the Sixth Circuit in *In re Krohn,* 886 F.2d 123, 126 (6th Cir. 1988). In *Krohn*, the Sixth Circuit considered a variety of factors in its analysis, but it also held that a case may be dismissed solely because the debtor has the means to repay his debts, although dismissal is not mandated on this factor alone. The factors I adopted in *Miller* were based on those used in *Krohn* supplemented with additional factors considered by the Fourth Circuit in *In re Green*, 934 F.2d 568 (4th Cir. 1991). These factors are: (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statements of current income

---

[3]Debtor suggests that a review of the totality of the circumstances is not possible because the UST failed to offer evidence on factors other than the ability to pay. Although the evidence offered by the UST as to factors other than the ability to pay was meager, the Court finds that evidence in the Court's records, of which it may take judicial notice, and the testimony presented at the hearing are sufficient to evaluate the totality of the circumstances in this case.

8

and expenditures reasonably and accurately reflect his true financial condition; (5) whether the bankruptcy petition was filed in bad faith; (6) whether the debtor had engaged in eve of bankruptcy purchases; (7) whether the debtor enjoys a stable source of future income; (8) whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code; (9) whether there are state remedies with the potential to ease his financial predicament; (10) the degree of relief obtainable through private negotiations; and (11) whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities. *Id.*, 302 B.R. at 499. In *Miller*, I indicated that although I would examine all of the above factors, I would not require a finding that an ability to repay debt must also be accompanied by proof of misconduct, impropriety or bad faith for the filing of the petition to constitute substantial abuse. *Id.* 302 B.R. at 499.

Section 707(b)(3)(B) explicitly incorporates the totality of the circumstances analysis that existed in the case law before the passage of BAPCPA. Whether dismissal is appropriate under § 707(b) requires a fact-intensive analysis unless the petition is presumed abusive under § 707(b)(2). Accordingly, the totality of the circumstances analysis adopted by this Court in *Miller* may be applied to cases arising under the new statute.

Following the hybrid approach of *Krohn*, in *Miller* I held that a case may be dismissed solely because the debtor has the means to repay his debts, although dismissal is not mandated on this factor alone. At least one bankruptcy decision issued after the passage of BAPCPA, *In re Nockerts, supra*, has held that because of the addition of § 707(b)(2), something in addition to the ability to pay must be present to warrant dismissal under the totality of the circumstances analysis under § 707(b)(1) and (3). I disagree. Simply because Congress established financial thresholds

9

at which abuse is to be presumed under §707(b)(2) does not preclude a court from determining that a debtor's ability to pay demands dismissal of a case under § 707(b)(3)(B).

      c.     *Is the petition filed in this case abusive under the totality of the circumstances test?*

In order to determine whether the petition in this case constitutes abuse of the Bankruptcy Code, the Court will address each of the following factors:

    (1)    <u>whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment</u>.

No evidence was presented that Debtor was ill or suffered any extraordinary calamity before he filed his petition.

    (2)    <u>whether debtor made consumer purchases far in excess of his ability to repay</u>.

Debtor's schedule "F" shows a total of approximately $68,500.00 in unsecured, nonpriority debts. Virtually all of this debt is credit card debt, but whether the specific charges were made as consumer purchases or business purchases is not indicated. The schedule does not provide any dates for any of the charges. Thus, while the total amount of unsecured debt was in excess of Debtor's ability to pay, it is not clear that the purchases at issue were consumer purchases.

    (3)    <u>whether debtor's proposed family budget is excessive or unreasonable</u>.

Aside from a mortgage payment of $1,581.50 that consumes over 42% of Debtor's household income, Debtor's household expenses are well within reasonable limits. As discussed below, the expenses of Debtor's household are borne entirely by Debtor's spouse. After Debtor amended his schedules to state that both his job and his investment property generated negative income, the UST asserted that the expenses incurred by Debtor in conducting his business and in

10

Case 1:06-bk-02293-MDF    Doc 53    Filed 08/20/07    Entered 08/21/07 07:53:34    Desc
Main Document    Page 10 of 16

renting his investment property were unreasonable because they generated losses rather than profits. The UST suggests that if Triple A HVAC would cease doing business and Debtor would liquidate his investment property, Debtor's household would generate disposable income of $922.00 per month.  The Court agrees with the UST that Debtor would be wise to obtain other employment if he is unable to operate Triple A HVAC at a profit.  He also should liquidate the investment property if the income produced does not, at a minimum, cover the expenses of maintaining the property. But neither of these actions will enable Debtor himself to generate disposable income.  It is clear that all disposable income enjoyed by the Debtor's household is provided by his spouse.

>    (4)    whether debtor's schedules and statements of current income and expenditures reasonably and accurately reflect debtor's true financial condition.

Debtor's initial schedule "I" was seriously deficient.  It stated that Debtor had regular income from the operation of a business in the amount of $300.00 per month, but no detailed business records were attached.  Also, Debtor failed to disclose rental income he received from the investment property.  Even after the UST requested additional information, Debtor failed to provide a detailed statement of his business income and expenses.[4] Debtor also failed to provide specific information on the part-time position held by Debtor's spouse and to correctly report the amount of his charitable contributions. Generally, as first filed, Debtor's schedules were inaccurate and provided insufficient information on the income and expenses of both himself and his non-debtor spouse.

---

[4] For reasons unclear to the Court, the UST did not seek to compel discovery on Debtor's business income and expenses.  Apparently the UST was satisfied with the information provided in amended schedules "I" and "J" that were filed after Debtor prepared and filed his 2006 federal income tax return.

11

(5)  <u>whether the bankruptcy petition was filed in bad faith</u>.

The UST does not assert that the petition was filed in bad faith and the Court finds no basis to dismiss the case under § 707(b)(3)(A).

(6)  <u>whether the debtor had engaged in eve of bankruptcy purchases</u>.

Debtor failed to indicate on schedules "D" and "F" the dates upon which debts were incurred. Therefore, I cannot determine whether or not Debtor engaged in any eve of bankruptcy purchases.

(7)  <u>whether the debtor enjoys a stable source of future income</u>.

At the filing of the petition and the date of the hearing on the within motion, Debtor clearly did not enjoy a stable source of future income. He was totally dependent upon his wife's earnings.

(8)  <u>whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code</u>.

Debtor is eligible to be a debtor under chapter 13 pursuant to 11 U.S.C. § 109(e). However, it is uncertain how he would confirm a plan in the absence of disposable income. Section 1325(b)(1) provides that if the trustee or a holder of an unsecured claim objects, the court may not approve a plan unless the plan provides that all of the debtor's projected disposable income to be received during the applicable commitment period is paid to unsecured creditors. Disposable income is defined to be current monthly income less amounts reasonably necessary to support the debtor or a dependent. 11 U.S.C. § 101(10A). If I accept the UST's thesis that Debtor's business and investment property expenses are unreasonable, Debtor would be required to liquidate both interests. But the liquidation of these assets, while reducing losses, do not

12

produce income. If Debtor is permitted to continue to operate his business at a loss and to retain the investment property at a loss, he still has no income. Because Debtor has no income under either scenario, it is impossible for him to have disposable income.

    (9)    <u>whether there are state remedies with the potential to ease his financial predicament</u>.

There is no information present in the record to determine whether there are state remedies that might ease Debtor's financial predicament.

    (10)    <u>the degree of relief obtainable through private negotiations</u>.

The degree of relief obtainable through private negotiations is not discernable from the record.

    (11)    <u>whether the debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities</u>.

As noted above, Debtor's expenses could be reduced if he would dispose of the investment property, which incurs costs in excess of income generated. His household expenses could be reduced if Debtor and his spouse obtained less expensive housing. However, the income earned by Debtor's spouse, not that of the Debtor, enables the household to make the mortgage payments. It would be inappropriate for this Court to require Debtor's non-filing spouse to surrender her home in order to enable her to pay her husband's creditors to whom she owes no obligation.

After reviewing the factors discussed above, I conclude that the one factor that supports dismissal of the case is Debtor's failure to file accurate and complete schedules and statements sufficient to detail his financial condition. However, I find that the inadequacy of the original

13

schedules was partially cured by the amendments.[5] Other relevant factors support denial of the UST's motion including Debtor's good faith and his lack of a stable source of future income.

        d.      *Relevance of income of non-filing spouse in totality of circumstances analysis*.

The Court agrees with the UST that a non-filing spouse's income is relevant when determining whether a debtor has the ability to repay his debts. Numerous courts have held that the income of a non-debtor spouse is part of a totality of the circumstances analysis. *In re Welch*, 347 B.R. 247 (Bankr. W.D. Mich. 2006); *In re Rysso*, 321 B.R. 522 (Bankr. D. Minn. 2005); *In re Falke*, 284 B.R. 133 (Bankr. D. Or. 2002); *In re Staub*, 256 B.R. 567 ( Bankr. M.D. Pa. 2000); *In re Duncan*, 201 B.R. 889 (Bankr. W.D. Pa. 1996); *In re Berndt*, 127 B.R. 222 (Bankr. D. N.D. 1991). Consideration of a non-filing spouse's income and expenses is relevant when determining whether the non-filing spouse is bearing an appropriate proportion of the household expenses as well as assuming responsibility for his or her separate expenses. But it would be inequitable for this Court to ignore the reality that the non-filing spouse has not sought relief under the Bankruptcy Code in this case. *See Welch*, 347 B.R. at 251 ("[T]he question before me is not whether the [debtor's] family is substantially abusing . . . Chapter 7 but whether [the debtor] herself is substantially abusing those provisions.")

The UST cites Judge Woodside's decision in *Staub* in support of the motion to dismiss, but her reliance is misplaced. In *Staub*, the debtor had monthly net income of $1,450.00 and expenses of $1,726.00, which included $900.00 per month in payments to a non-dependent child.

---

[5]The UST did not argue that the inadequacy of the information provided on Debtor's business affairs required dismissal of the case. She simply stated that the losses incurred by Debtor's business were unreasonable and if disallowed would enable Debtor to fund a plan from the earnings of Debtor's spouse.

Unlike the debtor in *Staub,* when his spouse's income is ignored, Debtor has zero net income. In *Staub,* after the payment of her separate expenses, the debtor's spouse enjoyed net disposable income of approximately $16,000.00 per month, an amount far in excess of Ms. Athens' monthly net disposable income of $922.00 after the payment of all household expenses.[6] In finding that the filing of the *Staub* case constituted substantial abuse, Judge Woodside cited favorably the observations of the bankruptcy court in *Berndt* that the non-debtor spouse's income was being considered only for the purpose of "determining *whether the Debtor himself has available discretionary income* by virtue of the fact that he and the non-debtor spouse share a joint household." *Id.* at 225 (emphasis added). Because the debtor's spouse in *Staub* could readily pay her expenses as well as those of her husband, the court determined that the debtor had to commit his net income to the repayment of his creditors or suffer dismissal of his case. In contrast, in the within case Debtor's spouse earns all of the income that supports the family by holding both a full-time position with an information technology services company and a part-time at a retail store. If I accept the information in Debtor's second amended schedule "I" and amended schedule "J," the expenses of Debtor's household exceed its income. Clearly, under this scenario Debtor and his spouse together have no ability to pay Debtor's debts. If I accept the UST's calculations, Debtor's household has excess income of $922.00. But Debtor's employment and investments make no contribution whatsoever to household expenses. Unlike the debtors' situations in *Berndt* and *Staub*, no available discretionary income is created for Debtor simply because he and his non-debtor spouse share a joint household. Therefore, under a totality of the circumstances

---

[6]The disposable income amount is calculated without consideration of Debtor's business and investment losses of $951.00 per month.

15

Case 1:06-bk-02293-MDF    Doc 53    Filed 08/20/07    Entered 08/21/07 07:53:34    Desc
Main Document    Page 15 of 16

analysis, the income of Debtor's spouse does not free up income for Debtor that can be devoted to a chapter 13 plan.

Debtor needs a chapter 7 discharge and it would unfair for this Court either to deny that relief or to force the Debtor's non-filing spouse to fund a plan to pay his creditors. Accordingly, the motion to dismiss will be denied. An appropriate order will be entered.

By the Court,

_Mary D. France_
Bankruptcy Judge

Date: August 20, 2007

*This document is electronically signed and filed on the same date.*